## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Jamie Huber,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:22-cv-03570-PD |
| | § | |
| **Expedia, Inc.,** | § | |
| | § | |
| Defendant. | § | |

## EXPEDIA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................i

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION ............................................................................................1

RELEVANT ALLEGATIONS ............................................................................2

ARGUMENT & AUTHORITIES .........................................................................3

    A.    Lack of Subject Matter Jurisdiction—No Constitutional
        Standing ...........................................................................3

        1.    Huber's characterization of statutory rights as
                "substantive" is irrelevant. ..........................................5

        2.    Huber's action is not closely related to invasion of
                privacy.......................................................................6

        3.    Huber fails to allege an imminent risk of future
                exposure of private information...................................10

    B.    Failure to State a Claim ....................................................11

        1.    Huber fails to plead that Expedia used a device. ........12

        2.    Mouse clicks and movements, keystrokes, scroll
                movements, and copy and paste actions do not
                constitute the contents of a communication...............14

        3.    Huber gave prior consent to Expedia's acquisition of
                search terms and information she inputted into
                Expedia's website. .....................................................16

CONCLUSION ...............................................................................................17

CERTIFICATE OF SERVICE ............................................................................19

i

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009)........................................................... 11, 12, 14

*Barclift v. Keystone Credit Servs., LLC*,
　　585 F. Supp. 3d 748 (E.D. Pa. 2022)...............................................9

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)................................................................11

*Com. v. Cruttenden*,
　　58 A.3d 95 (Pa. 2012) ...............................................................2

*Com. v. Proetto*,
　　771 A.2d 823 (Pa. Super. Ct. 2001) ............................................17

*Commonwealth v. Byrd*,
　　235 A.3d 311 (Pa. 2020)....................................................... 16, 17

*Cox Broad. Corp. v. Cohn*,
　　420 U.S. 469 (1975)................................................................7

*Goldstein v. Costco Wholesale Corp.*,
　　559 F. Supp. 3d 1318 (S.D. Fla. 2021)..................................... 15, 16

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
　　982 F.3d 1069 (7th Cir. 2020) ....................................................6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
　　806 F.3d 125 (3d Cir. 2015) ......................................................14

*In re Nickelodeon Consumer Privacy Litig.*,
　　MDL No. 2443 (SRC), 2014 WL 3012873 (D.N.J. July 2, 2014)...............14

*In re Zynga Priv. Litig.*,
　　750 F.3d 1098 (9th Cir. 2014) ...................................................14

ii

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012) ................................................................. 11, 16

*Kamal v. J. Crew Grp.*,
   918 F.3d 102 (3d Cir. 2019) ................................................................. 7, 10

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
   19 F.4th 58 (2d Cir. 2021) ................................................................... 5

*Massie v. General Motors LLC*,
   No. 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ............... 7, 8, 9

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) (en banc) ............................................. 6

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
   45 F.4th 816 (5th Cir. 2022) ................................................................ 6, 12

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) ................................................................. 2, 12

*Potter v. Havlicek*,
   No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ............. 13

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) .................................................................. 10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................ 4, 6

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
   980 F.3d 879 (3d Cir. 2020) ............................................................... 4

*TransUnion LLC v. Ramirez*,
   141 S.Ct. 2190 (2021) ......................................................................... passim

*Vaughan v. Fein, Such, Kahn & Shepard, P.C.*,
   No. CV 21-16013, 2022 WL 2289560 (D.N.J. June 24, 2022) ............... 6

iii

*Wheeler v. Travelers Ins. Co.*,
    22 F.3d 534 (3d Cir. 1994) ...............................................................................3

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................... 14, 15

## **Statutes**

18 U.S.C. § 2510 ...............................................................................................13

Pennsylvania Wiretapping and Electronic Surveillance Control Act,
    18 Pa. Cons. Stat. § 5701 et seq ............................................................. passim

## **Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................. 3, 11, 17

Fed. R. Civ. P. 12(b)(6) ............................................................................... 11, 17

iv

## INTRODUCTION

Serial class-action plaintiff Jamie Huber claims to have visited Expedia, Inc.'s website more than 30 times in the last year, though she does not claim to have purchased a single thing during any of those visits. Instead, she brought this suit—which is practically identical to two suits she has filed against Lowe's hardware and Zillow.com—alleging that Expedia collected information about her use of its site and, in doing so, violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, which prohibits, subject to several exceptions, the use of a device to intercept communications. But Huber's action fails for multiple reasons.

First, Huber lacks standing under Article III of the Constitution because she fails to allege that Expedia's purported collection of website usage data caused her any injury-in-fact. The Court therefore lacks subject-matter jurisdiction over this suit.

Second, even absent this jurisdictional defect, Huber's amended petition should be dismissed because it fails to state a claim upon which relief can be granted. In order to plausibly allege that Expedia intercepted a communication in violation of the Act, Huber must allege facts establishing a reasonable inference that (a) Expedia used a *device* to (b) acquire the *contents* of a communication. She has failed to do so. Although Huber alleges that Expedia used session replay software to acquire her communications, software does not satisfy the Act's definition of *device*. In addition, much of the information that Huber alleges Expedia acquired does not constitute *content* under the Act. Finally, as to the information Huber al-

1

leges Expedia acquired that arguably constitutes *content*, Huber consented to that acquisition.[1]

**RELEVANT ALLEGATIONS**[2]

Expedia, Inc. ("Expedia") is an online travel company that owns and operates the website www.expedia.com. Huber claims to have visited Expedia's website 30 or more times in the past year, most recently in August 2022. (Pl.'s 1st Am. Compl. ¶ 23–24.) Huber alleges that Expedia uses session replay software on its website to collect data reflecting how users interact with its website, "including their mouse movements and clicks, keystrokes, search terms, information inputted into the website, and pages and content viewed while visiting the website." (*Id.* ¶ 3.) According to Huber, the collection of this information constitutes "intercep-

---

[1] Huber's amended complaint should also be dismissed for failure to state a claim on which relief can be granted because she alleges that Expedia was a party to her communications. (Pl.'s 1st Am. Compl. ¶ 3.) No interception occurs when a direct recipient is the one acquiring a communication. *See Com. v. Cruttenden*, 58 A.3d 95, 99 (Pa. 2012) ("In this case, Detective Morris was a direct party to the communications from Appellant. There was no eavesdropping or wiretapping. Detective Morris obtained the information because he was a party to the communication."). Because Expedia was a direct party to Huber's communications (Am Compl. ¶ 3), her amended complaint fails to plausibly allege that Expedia intercepted those communications. Expedia recognizes that the Third Circuit limited the applicability of the direct party exception in *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022), but nevertheless raises the argument here to preserve it for appeal.

[2] Because the Court assumes the plaintiff's well-pleaded factual allegations as true for purposes of ruling on a motion to dismiss, Expedia recounts relevant allegations here. In doing so, Expedia does not admit or waive its right to dispute the accuracy of any of those allegations—including the numerous false allegations concerning the operating of Expedia's website—in the event this case proceeds beyond the motion to dismiss stage.

2

tion" of users' "electronic computer-to-computer data communications" with Expedia's website. (*Id.*)[3]

Based on these allegations, Huber claims that Expedia intercepted her electronic communications in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701 *et seq.* (the "Act"). She purports to bring her claim on behalf of all persons residing within the State of Pennsylvania who visited Expedia's website and whose electronic communications were intercepted by Expedia or on its behalf without prior consent. (Pl.'s 1st Am. Compl. ¶ 64.) Huber seeks on behalf of herself and the class, among other relief, "actual damages, statutory damages, liquidated damages, and/or punitive damages as well as attorney's fees and costs." (*Id.* at 20.)

### Argument & Authorities

### A. Lack of Subject Matter Jurisdiction—No Constitutional Standing

The Court should dismiss this case under Rule 12(b)(1) because Huber lacks standing under Article III of the United States Constitution. *See Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) ("[S]tanding goes to the subject mat-

---

[3] Although Huber alleges that she visited Expedia's website more than 30 times and "input information" into the site, her complaint is silent as to whether she created an expedia.com user account or booked any travel through the website. If she did so, she would have been required to click a button confirming her understanding and agreement to Expedia's Terms of Use, which include a binding arbitration provision, and its Privacy Policy, which discloses in detail the various cookies and other technology the site uses. If discovery confirms that Huber consented to the Terms of Use, Expedia reserves the right to move to compel arbitration under the Federal Arbitration Act.

3

ter jurisdiction of the district court…[and,] [t]hus, is a threshold question in every case." (citations and internal quotation marks omitted)).

Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021). "To assure that judges avoid rendering impermissible advisory opinions, parties seeking to invoke federal judicial power must first establish their standing to do so." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). To establish standing, a plaintiff must show that (i) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief. *TransUnion*, 141 S.Ct. at 2203. At the pleadings stage, the plaintiff must "clearly…allege facts demonstrating each element." *Spokeo*, 578 U.S. at 340 (cleaned up).

Huber lacks standing because she fails to allege facts showing that she suffered a concrete, imminent injury. Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 141 S.Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). Traditional tangible harms—such as physical injury or monetary loss—readily qualify as concrete injuries under Article III. *Id.* at 2204. Various intangible harms can also be concrete, provided that the alleged injury has a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.*; *accord Thorne*, 980 F.3d at 886.

Huber does not allege any facts suggesting that she suffered any tangible injury—such as physical harm or monetary loss—as a result of Expedia's alleged conduct. Instead, she asserts that Expedia's purported use of session reply software caused her intangible harm in the form of "violations of [her] substantive legal privacy rights under the [Act], invasion of [her] privacy, and potential exposure of [her] private information." (Pl.'s 1st Am. Compl. ¶ 14; *accord id.* ¶ 63.) None of these asserted intangible harms constitutes a concrete, imminent injury necessary to establish Article III standing.

## 1. Huber's characterization of statutory rights as "substantive" is irrelevant.

As an initial matter, Huber's assertion that Expedia violated her "substantive" rights under the Act is nothing more than an assertion of a statutory violation, which is insufficient to show a concrete injury. As the Supreme Court made clear in *TransUnion*, "under Article III, an injury in law is not an injury in fact." *TransUnion*, 141 S.Ct. at 2205. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*

To be sure, some courts previously entertained the "preoccupation" of classifying alleged statutory violations as substantive or procedural in determining whether an asserted injury was concrete. *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 & n.2 (2d Cir. 2021). But, as many courts have recognized, "*TransUnion* eliminated the significance of such classifications." *Id.* at 64 n.2; *accord Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823

5

(5th Cir. 2022) ("[R]egardless of whether a statutory right is procedural or substantive… 'Article III standing requires a concrete injury even in the context of a statutory violation.'" (quoting *Spokeo*, 578 U.S. at 341)); *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No. CV 21-16013, 2022 WL 2289560, at *4 & n.3 (D.N.J. June 24, 2022) ("Plaintiff's related argument that the FDCPA provides a substantive right that confers standing in and of itself begs the question given the inquiry required by *TransUnion*."); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 930 (11th Cir. 2020) (en banc) ("[A]rguments grounded in a distinction between substantive and procedural rights miss the point and are 'unconvincing' because they depend 'entirely on the framing of the right.'"); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) ("Article III of the Constitution does not distinguish procedural from substantive claims; it makes injury essential to all litigation in federal court."). Huber's characterization of her purported statutory rights as substantive, then, makes no difference in the standing analysis.

### 2.  Huber's action is not closely related to invasion of privacy.

Huber's assertion that she suffered an "invasion of privacy" is equally unavailing because invasion of privacy is not a close historical or common-law analogue for her alleged injury. *See TransUnion*, 141 S.Ct. at 2204 (explaining that the historical-analogue test "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury").

The historical-analogue test does not require an exact duplicate in American history and tradition, *id.*, but "it is important that the relationship be 'close,'"

*Kamal v. J. Crew Grp.*, 918 F.3d 102, 114 (3d Cir. 2019). And the relationship is not sufficiently close where essential elements of the proposed analogue are absent from the plaintiff's statutory action. For example, in *TransUnion*, the Supreme Court held that plaintiffs whose false credit files were not provided to third parties did not suffer a harm with a "close relationship" to defamation because "[p]ublication is 'essential to liability' in a suit for defamation." *TransUnion*, 141 S.Ct. at 2209. Similarly, in *Kamal*, the Third Circuit held that the plaintiff's alleged injury did not have the requisite close relationship with the traditional tort of "unreasonable publicity given to [another]'s private life"—one species of privacy tort—because the plaintiff did not allege that his personal information was disclosed to a third party, which is the "gravamen" of the injury in that tort. *Kamal*, 918 F.3d at 114 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 489 (1975)).

A court in this Circuit recently applied the historical-analogue test to claims almost identical to Huber's and held that the plaintiff lacked standing. *See Massie v. General Motors LLC*, No. 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022). The plaintiffs in that case alleged that the defendant violated a similar state wire-tapping statute by using session replay software that "records website users' mouse movements, clicks, and keystrokes, producing 'video-accurate renders of real visits' to websites." *Id.* at *2. The plaintiffs attempted to show a concrete harm by analogizing their purported injury to "an invasion of privacy or a harm to their 'interest in controlling their personal information.'" *Id.* at *3.

The court rejected that analogy because the plaintiffs' allegations lacked at least two key elements of the comparable common law privacy tort. First, common

law actions for invasion of privacy based on the right to control one's personal in-formation require an unreasonable intrusion into information that is personal or private, such that a person has a reasonable expectation of privacy. *See Massie*, 2022 WL 534468 at *3, *5. As the court in *Massie* rightly concluded, website us-age data such as mouse clicks, mouse movements, and key strokes that a website user makes on a publicly accessible website, as well as the search terms that the user intentionally submits to that website, are not personal or private information. *Massie*, 2022 WL 534468 at *3, *5. Second, such actions require proof that the plaintiff's private information was made public. *Id.* at *4–5. But the plaintiffs failed to allege that any of the information allegedly intercepted was publicly dis-closed. *Id.* Because the plaintiffs' statutory claim included neither of these essential elements, the court held that the plaintiffs failed to allege a concrete injury.

Huber's attempt to analogize to common law actions for invasion of privacy fails for the same reasons. First, like the plaintiffs in *Massie*, Huber does not allege that Expedia used session reply software to intercept information that is personal or private, such as social security numbers, credit card numbers, or dates of birth. *See Massie*, 2022 WL 534468, at *1. Instead, like the plaintiffs in *Massie*, Huber alleg-es that Expedia captured various types of objective information about how she in-teracted with Expedia's website, such as her mouse clicks, mouse movements, key strokes, and pages visited while on Expedia's website. Such objective usage data is different in kind from the private information protected by traditional common law privacy torts. *Id.* at *4–5. This is doubly true for information that users intentional-ly "input[] into the website," such as search terms, which Huber also identifies as a

8

basis for her claim. (Pl.'s 1st Am. Compl. ¶¶ 3, 26, 41.) A website user has no reasonable expectation that information it intentionally inputs into a website will be kept private from the website's operators. Indeed, the entire purpose of inputting information is so that the website operator can act on that information.

Second, even if Huber had alleged interception of private or personal information, her claim lacks the other critical element of comparable common law privacy torts that was also missing in *Massie*: public disclosure of such information. *See Massie*, 2022 WL 534468, at *4; *see also Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748, 758 (E.D. Pa. 2022) (comparable common law claim requires that "a matter must be made public through communication to either the general public or enough people that the matter is substantially certain to become public knowledge"). Although Huber's complaint includes a conclusory assertion that she and the putative class suffered "exposure of their private information" (Pl.'s 1st Am. Compl. ¶ 63), she does not allege any **facts** to support this conclusory assertion, *see Massie*, 2022 WL 534468, at *4 n.4. Huber's complaint alleges that Expedia shared the data at issue with only one other party: Expedia's purported session-replay software provider. (Pl.'s 1st Am. Compl. ¶ 37.) But a defendant's alleged disclosure of information to a vendor does not amount to publication of that information. *Barclift*, 585 F. Supp. 3d at 758–59 ("[S]haring information with a … vendor … cannot satisfy the requirement of publicity for a privacy claim." (citing *TransUnion*, 141 S.Ct. at 2210 n.6)). Absent allegations amounting to publication, Huber's alleged injury does not bear a close relationship to the harm underlying common law privacy torts and, therefore, is not concrete. *See id.*

9

### 3. Huber fails to allege an imminent risk of future exposure of private information.

Unable to allege that her private information was actually made public, Huber alleges that Expedia's alleged use of session replay software exposed her to "**potential** exposure of private information" (Pl.'s 1st Am. Compl. ¶ 14 (emphasis added)) and "a material **risk of harm** to [her]…privacy and interest in controlling [her] personal information, habits, and preferences" (*id.* ¶ 63 (emphasis added)). Binding case law forecloses this theory too.

For an alleged risk of future harm to constitute an injury-in-fact, it must be "imminent" or "certainly impending." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). Hypothetical future injuries based on a speculative chain of events does not suffice. *Kamal*, 918 F.3d at 116. To adequately allege a material risk of future harm, a plaintiff must "clearly and specifically set forth facts showing a risk of harm." *Id.* "[C]onclusory allegations of risk are insufficient." *Id.* But conclusory allegations of future harm are all that Huber offers. Nowhere in her complaint does she clearly and specifically set forth facts showing that Expedia's alleged use of session replay software caused her any imminent or certainly impending risk of harm.

Moreover, in cases where the plaintiff seeks only damages, even a material risk of harm is insufficient to show injury-in-fact unless the plaintiff also alleges facts showing that "the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion*, 141 S.Ct. at 2211. Huber seeks only damages in this case. (Pl.'s 1st Am. Compl. ¶ 87 & p. 20.) Thus, even if Huber had adequately al-

10

leged a material, non-hypothetical risk of harm, that would still be insufficient because she fails to allege that the exposure to that risk caused her a separate concrete harm.

Huber fails to allege any facts showing that she suffered an imminent, concrete injury from Expedia's alleged use of session replay software. She therefore lacks standing, and the Court should dismiss this case under Rule 12(b)(1).

## B. Failure to State a Claim

Even if Huber did have standing, her amended complaint should be dismissed because it fails to state a claim on which relief can be granted. Under Rule 12(b)(6), a complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), meaning that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. And while the Court "accept[s] as true all factual assertions," it must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

In order to state a claim on which relief can be granted, Huber must plausibly allege that Expedia "intercept[ed]" a wire, electronic, or oral communication. 18 Pa. Const. Stat. § 5703. The Act defines *intercept* as "[a]ural or other acquisition of **the contents of** any wire, electronic or oral communication through the use of

11

any electronical, mechanical, or other **device**." *Id.* § 5702 (emphasis added). Thus, in order to plausibly allege that Expedia intercepted a communication, Huber must allege facts establishing a reasonable inference that (a) Expedia used a device to (b) acquire the contents of a communication. She has failed to do so. Although Huber alleges that Expedia used session replay software to intercept incoming data communications, software does not satisfy the Act's definition of *device. See id.* (defining *electronic, mechanical, or other device*). In addition, much of the information that Huber alleges Expedia acquired does not constitute content under the Act. *See id.* (defining *contents*). And as for the information Huber alleges Expedia acquired that arguably does constitute content, Huber consented to that acquisition. *See id.* § 5704(4).

### 1. Huber fails to plead that Expedia used a device.

In order to state a claim under the Act, Huber must allege facts giving rise to a reasonable inference that Expedia used a device to intercept a communication. 18 Pa. Const. Stat. § 5702 (defining *intercept*); *Iqbal*, 556 U.S. at 686–87; *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 126 (3d Cir. 2022) ("The [Act]'s use of 'intercept' thus reduces to acquiring certain communications using a device."). She has failed to do so.

Despite the Act's plain language, Huber does not plead the use of or otherwise identify a device. Huber claims that Expedia embedded session script in its website code to intercept incoming data communications to Expedia's website. (Pl.'s 1st Am. Compl. ¶¶ 30, 78.) That allegation is not sufficient to satisfy the Act's device requirement because software code does not constitute a device. *See*

4857-7151-9285

*Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at \*8–9 (S.D. Ohio June 23, 2008) (concluding that computer software did not qualify as a device under a similar definition of *electronic, mechanical, or other device* in 18 U.S.C. § 2510).

The Act's plain language makes clear that the definition of *device* does not extend to software code. The Act defines *electronic, mechanical, or other device* to mean, subject to certain exceptions not applicable here, "[a]ny **device or apparatus,** including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication." 18 Pa. Cons. Stat. § 5702 (emphasis added). Because the words *device* and *apparatus* are not further defined, the Court should consider the ordinary meaning of these terms, including their dictionary definition. *See* 1 Pa. Cons. Stat. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage….").

*Device* means "an object or machine that has been invented for a particular purpose." *Device*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/device (last visited Dec. 2, 2022). *Apparatus* means "a set of equipment or tools or a machine that is used for a particular purpose." *Apparatus*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/apparatus (last visited Dec. 2, 2022). In both instances, the definitions refer to physical items—an object, machine, equipment, or tools—making clear that the types of devices that qualify under the Act's definition are limited to **physical** devices that can be used to intercept a communication. Because Huber does not al-

13

lege that Expedia used a device to acquire a communication, her amended complaint must be dismissed.

### 2. Mouse clicks and movements, keystrokes, scroll movements, and copy and paste actions do not constitute the contents of a communication.

To adequately plead a violation of the Act, Huber must allege facts giving rise to a reasonable inference that Expedia acquired the *contents* of a wire, electronic, or other communication. 18 Pa. Const. Stat. §§ 5702 (defining *intercept*), 5703; *see Iqbal*, 556 U.S. at 686–87. Under the Act, the definition of *contents* is limited to "any information concerning the substance, purport, or meaning of [any wire, electronic, or oral] communication." 18 Pa. Const. Stat. § 5702. Courts interpreting *contents* under similar wiretapping statutes have concluded that *contents* "consist of information the user intended to communicate, such as the spoken words of a telephone call." *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443 (SRC), 2014 WL 3012873, at *14 (D.N.J. July 2, 2014) (internal quotations omitted). "[R]ecord information regarding the characteristics of the message that is generated in the course of the communication," *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)), as well as "dialing, routing, addressing, or signaling information . . . when they are performing such a function," *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 137 (3d Cir. 2015), do not constitute *contents*, as they do not convey the substance, purport, or meaning of a communication.

14

Huber claims that Expedia, using session replay software, "intercept[ed] the substance of [her] electronic communications with [Expedia's] website, including mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, pages and content viewed by Plaintiff, [] scroll movements, and copy and paste actions." (Pl.'s 1st Am. Compl. ¶ 36.) Huber's allegations regarding mouse clicks and movements, keystrokes, pages and content viewed, scroll movements, and copy and paste actions—information regarding her movement on Expedia's website— are insufficient to plausibly plead interception because, as multiple courts have held, those actions do not convey the "substance, purport, or meaning" of a communication. *See, e.g.*, *Yoon*, 549 F. Supp. 3d at 1082–83; *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). "None of these pieces of data constitutes message content in the same way that the words of a text message or email do." *Yoon*, 549 F. Supp. 3d at 1082–83.

The Act's text further supports the conclusion that mouse clicks and movements, keystrokes, pages and content viewed, scroll movements, and copy and paste actions do not constitute *content*. "[T]he mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store." *Goldstein*, 559 F. Supp. 3d at 1321. The Act's text makes clear that such tracking information falls outside its scope. The Act specifically excludes from the definition of *electronic communication* "[a]ny communication from a tracking device," defined to be "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object." 18 Pa. Const. Stat. § 5702.

15

4857-7151-9285

Huber's conclusory assertion that the communications allegedly intercepted were "content…relating to the substance, purport, and/or meaning of [her] communications with the website" (Pl.'s 1st Am. Compl. ¶ 41) does not save her complaint from dismissal. While the Court "accept[s] as true all factual assertions," it must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James*, 700 F.3d at 681.

Because Huber's mouse clicks and movements, keystrokes, pages and content viewed, scroll movements, and copy and paste actions on Expedia's website "had no contents," "as they did not convey the substance of any particular communication," those allegations are insufficient to allege that Expedia intercepted a communication. *Goldstein*, 559 F. Supp. 3d at 1321.

### 3. Huber gave prior consent to Expedia's acquisition of search terms and information she inputted into Expedia's website.

With respect to the other two categories of information that Huber alleges Expedia acquired (search terms and information inputted into the website)—both of which Huber submitted to Expedia—Huber's amended complaint should be dismissed because Huber consented to Expedia's acquisition of that information. Section 5704(4) provides that "[i]t shall not be unlawful and no prior court approval shall be required under this chapter for…[a] person to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa. Const. Stat. § 5704(4). "[P]rior consent" does not require "actual knowledge." *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020). Rather, "'prior consent' can be demonstrated when the person being record-

16

ed knew or should have known that the conversation was being recorded." *Id.* (internal quotations omitted).

Here, Huber consented to Expedia recording her search terms and other information she allegedly inputted into Expedia's website because she knew or should have known that, once she submitted that information, it would be received by Expedia. *See Com. v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003) ("By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.") Huber has therefore failed to plausibly allege that Expedia unlawfully intercepted search terms or other information she allegedly submitted on Expedia's website.

### CONCLUSION

For the reasons stated herein, the Court should dismiss this case. The Court should dismiss the case under Rule 12(b)(1) for lack of subject matter jurisdiction because Huber does not have constitutional standing. And, even absent this jurisdictional defect, the Court should still dismiss this case under Rule 12(b)(6) because Huber's amended complaint fails to state a plausible claim under the Act.

*[Signature page follows]*

4857-7151-9285

Dated: December 5, 2022       Respectfully submitted,


By: *&#95;/s/ David D. Shank&#95;*

    David D. Shank (*pro hac vice*)
    Santosh Aravind (*pro hac vice*)
    Cheryl LaFond (*pro hac vice*)
    Lauren Ditty (*pro hac vice*)
    **SCOTT DOUGLASS & MCCONNICO LLP**
    303 Colorado Street, Suite 2400
    Austin, TX  78701-3234
    (512) 495-6300 – Telephone
    (512) 495-6399 – Fax


    Beth Moskow-Schnoll (PA ID 52180)
    Hannah L. Welsh (PA ID 327454)
    **BALLARD SPAHR LLP**
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103
    (215) 665-8500 – Telephone
    (215) 864-8999 – Fax

    *Attorneys for Expedia, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 8(b), I certify that this document has been filed electronically and is available for viewing and downloading from the ECF system, and that service on counsel for plaintiff Jamie Huber was accomplished via the ECF system.

/s/ Hannah L. Welsh
Hannah L. Welsh (PA ID 327454)

4857-7151-9285